UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMADOU DIA,

     Plaintiff,

                                     Case No. 1:26-cv-1054

v.

                                     Hon. Hala Y. Jarbou

KEVIN RAYCRAFT and
MARKWAYNE MULLIN,

     Defendants.

_____/

## <u>ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER</u>

Amadou Dia, currently detained by US Immigration and Customs Enforcement, has a petition for a writ of habeas corpus pending before the Court. (ECF No. 1.) Before the Court could reach the merits of Dia's petition, he filed a motion requesting that the Court enjoin his impending removal to Ghana, which Dia contends would be in violation of the Immigration and Nationality Act (INA), relevant regulations of the Department of Justice, and the constitutional guarantee of due process. (ECF No. 6.) Respondents oppose Dia's motion on the grounds that the Court lacks jurisdiction over Dia's claims, that litigation of this action is precluded by Dia's belonging to a class recently afforded declaratory and vacatur relief, and that Dia's removal to Ghana is lawful. (Opp'n, ECF No. 9.) The Court concludes that Dia is entitled to preliminary relief, so the motion will be granted.

## I.     BACKGROUND

Amadou Dia is a Senegalese national who was admitted to the United States on a nonimmigrant visa in 2006. (Opp'n 2.) Dia overstayed his visa, and in 2007 he submitted an application for asylum or withholding of removal. (*Id.*) Dia's application was referred to the

Executive Office of Immigration Review; in 2012, an immigration judge denied his asylum claim, ordered his removal to Senegal or Gabon, and granted him withholding of removal from Senegal. (*Id.*)  The record discloses no attempt by the government to enforce the removal order until September 17, 2025, when Dia was detained without bond in anticipation of his removal to Gabon. (*Id.*; Mot. Br. 1, ECF No. 7.)  When Gabon refused to issue travel documents for Dia, Immigration and Customs Enforcement (ICE) began exploring other countries to which Dia could be removed. (Opp'n 3.)  On March 25, 2026, ICE was informed that the country of Ghana would accept Dia without a travel document and that the government of Ghana had given the United States assurances that noncitizens removed to its jurisdiction would not be persecuted or tortured. (Opp'n 4.)  On March 30, Dia filed a petition for habeas corpus with this Court; on April 6, he filed the instant motion for preliminary relief to prevent his impending removal, which is scheduled to occur tomorrow.  The parties agree that pursuant to a March 2025 guidance document issued by the Department of Homeland Security,[1] Dia has not been afforded the opportunity to assert that he would be persecuted or tortured if removed to Ghana.  (*See* Reply 2–3, ECF No. 13; Suppl. Opp'n, ECF No. 14.)

## II.    LEGAL STANDARD

Preliminary relief is an exceptional remedy that a court may grant only when it is necessary to preserve the status quo before trial.  The four considerations that guide the decision to enter a TRO or preliminary injunction (the standard is the same for both, *see Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)) are the likelihood that the movant succeeds on the merits of their claims, the risk that the movant will be irreparably harmed absent an injunction,

---

[1] *See* Memorandum from Kristi Noem, Sec'y of Homeland Sec., to Kika Scott, U.S. Citizenship & Immigr. Servs.; Pete R. Flores, U.S. Customs & Border Prot.; and Todd Lyons, U.S. Immigr. & Customs Enf't (Mar. 30, 2025) [https://perma.cc/6NG8-VQ3X].

the balance of the equities favoring the movant, and the effect of an injunction on the public interest. *Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 404 (6th Cir. 2024). "In constitutional cases, the first factor is typically dispositive." *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021).

**III.    ANALYSIS**

**A.    Jurisdiction**

At the threshold, the government contends that this Court lacks jurisdiction over Dia's motion because of the jurisdiction-stripping provisions in 8 U.S.C. § 1252, which mandate that all objections to a final order of removal be raised through a petition for review by an appropriate court of appeals, *see id.* § 1252(a)(5), (b)(9), and which eliminate all other courts' jurisdiction over claims arising from the initiation, adjudication, or execution of removal proceedings, *see id.* § 1252(g). (Opp'n 7–9.) Dia replies that the Court is not ousted of jurisdiction because his challenge concerns the government's failure to provide him the opportunity to seek relief from removal to Ghana rather than the decision to remove him to Ghana itself. (Reply 1–2.)

At least at this stage of proceedings, the Court finds that Dia has the better argument. Start with § 1252(g), the provision on which the government places the most emphasis. Contrary to the government's expansive interpretation of subsection (g)'s bar on nonstatutory review of "decision[s] or action[s]" to "execute removal orders," both the Supreme Court and the Sixth Circuit have interpreted this limitation to reach only "attempts to impose judicial constraints" on the attorney general's discretion to defer action on a final removal order. *See Mustata v. U.S. Dep't of Just.*, 179 F.3d 1017, 1021 (6th Cir. 1999) (quoting *Reno v. AADC*, 525 U.S. 471, 485 n.9 (1999)). As even the government appears to acknowledge, § 1252(g) is designed to insulate "the refusal to exercise favorable discretion on behalf of specific aliens" from nonstatutory review. (Opp'n 8–9 (quoting *Alvarez v. ICE*, 818 F.3d 1194, 1205 (11th Cir. 2016) (cleaned up)).) Dia

3

does not challenge a refusal to exercise favorable discretion; he contends the Constitution and the immigration laws *oblige* the government to allow him to resist removal to a third country by presenting evidence that he had a reasonable fear of persecution.  Like many others before it, this Court concludes that subsection (g) does not bar such a challenge.  *See Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 544 (D. Md. 2025) (citing *Ibarra-Perez v. United States*, 154 F.4th. 989, 996 (9th Cir. 2025)); *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1005 (S.D. Tex. 2025) (allowing petitioner to "challenge[] the process he has been afforded after the Government made th[e] decision[] to remove him"); *Hao Qu v. Mullin*, No. 5:26-cv-1302, 2026 WL 836681, at *3 (C.D. Cal. Mar. 26, 2026); *Alvarez Guerra v. Blanche*, No. 2:26-cv-498, 2026 WL 949027, at *3 n.6 (D. Nev. Apr. 7, 2026) (collecting cases).[2]

The government's argument that jurisdiction is barred by § 1252(a)(5) and (b)(9) is similarly unpersuasive.  By their terms, subsections (a)(5) and (b)(9) are meant to channel review of a final order of removal into the courts of appeals.  But the claim asserted here arose long after Dia's removal order was entered.  It is questionable whether Dia could raise his challenge to the government's refusal to entertain his fear-based claims before a court of appeals; the government certainly points to no analogous case in which such a challenge was dismissed by a district court on the ground that it should have been brought in the appeals court.  By contrast, courts that have found the § 1252(g) bar inapplicable to third-country claims have been just as dismissive of the

---

[2] *Hamama v. Adducci*, in which the Sixth Circuit held that "the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review," is in some tension with *Mustata* and the cases cited in the main text.  912 F.3d 869, 874 (6th Cir. 2018). *Hamama* is arguably distinguishable from the instant case: the noncitizens there sought to enjoin their removal to the country named in their order of removal; here, by contrast, the country to which Dia is being removed was not specified in his removal order and was selected far after the order became final. *See id.* at 872.  In light of the exigency of Dia's situation, the Court will not now attempt to further reconcile *Hamama* and *Mustata*. *See United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) (articulating prior-panel rule).  The government is free to explicate its § 1252(g) argument at greater length in its briefing on why this TRO should not be converted into a preliminary injunction.

argument that the exclusive avenue of review of those claims is a petition for review by a court of appeals.  *See Portela-Hernandez v. Trump*, No. 25-1633, 2026 WL 74042, at *4–5 (D. Md. Jan. 9, 2026) (first citing *Cruz Medina*, 806 F. Supp. 3d at 544–45; and then citing *Sagastizado*, 802 F. Supp. 3d at 1004–05).  The Court concludes that § 1252 does not deprive it of jurisdiction to reach Dia's claims.

**B.     *D.V.D. v. DHS***

Next, the government contends that the Court should not adjudicate Dia's motion and should instead transfer this action to the District of Massachusetts so that his claim for relief is adjudicated as part of the class certified in *D.V.D. v. U.S. Department of Homeland Security*, No. CV 25-10676, 2026 WL 521557 (D. Mass. Feb. 25, 2026).  (Opp'n 9–12.)  Dia responds that because the First Circuit has stayed the district court's entry of final declaratory and vacatur relief, transfer of his action would be tantamount to denial of relief.  The parties cite no legal authorities addressing the effect of a final judgment in a Rule 23(b)(2) class action on the ability of class members to pursue overlapping relief through a habeas action.  Nor do they explain how the additional wrinkle of a stay of that final judgment should affect this Court's analysis.

Reasoning from first principles, the Court can see no basis for concluding that it is obliged to transfer this case to the District of Massachusetts simply because Dia is a member of the *D.V.D.* class.  For one thing, the declaration entered by the *D.V.D.* court recognizes only the right of the class members to request relief under the Convention Against Torture (CAT) and the statute giving it domestic effect, *see* 8 U.S.C. § 1231; here, by contrast, Dia appears to contend that he is also entitled to apply for asylum and withholding of removal.  The Supreme Court long ago rejected the contention that a member of a Rule 23 class is precluded from litigating individual claims not adjudicated in the class action in a subsequent second action.  *See Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 880–81 (1984).  Dia should therefore be able to pursue his claim that he

had a right to seek at least non-CAT relief before this Court. More broadly, to the extent the government's argument rests on the preclusive effect of a final judgment—as suggested by the government's reliance on the rule against splitting claims (*see* Opp'n 11–12)—the Court finds that consideration cuts against the government's position, seeing as the District of Massachusetts found *in favor* of the noncitizen class members, and by extension Dia. *See D.V.D.*, 2026 WL 521557, at *44. In light of the First Circuit's stay of the *D.V.D.* court's judgment, this Court is unwilling to place Dia's rights at risk on so questionable a legal basis. *See Portela-Hernandez*, 2026 WL 74042, at *10 ("The Court recognizes that other district courts have declined to entertain claims brought by individual petitioners arguably covered by the *D.V.D.* class. But the Government has not pointed the Court to authority mandating abstention from considering Portela-Hernandez's claims." (citation omitted)).

## C. Merits

### 1. Likelihood of Success

For the reasons set out by the *D.V.D.* court in its order granting summary judgment, the Court finds that Dia is likely to succeed on the merits of his claim. *See* 2026 WL 521557, at *28–40; *see also Pham v. Warden*, No. 1:25-cv-1873, 2026 WL 673404, at *17 (E.D. Cal. Mar. 10, 2026) (adopting *D.V.D.* analysis "by reference"), *adopted*, 2026 WL 849861 (E.D. Cal. Mar. 27, 2026). "The Due Process Clause of the Fifth Amendment guarantees aliens subject to removal a 'full and fair hearing.'" *Soto-Murillo v. Lynch*, 643 F. App'x 504, 506 (6th Cir. 2016) (quoting *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001)). Under existing policy, as the government admits, Dia has not been given the opportunity to apply for relief to prevent his removal to Ghana. (Suppl. Opp'n 4.) Because denial of an opportunity to present a claim of reasonable fear of torture or persecution creates an "unacceptably high risk of erroneous deprivation," *Cruz Medina*, 806 F. Supp. 3d at 549, "removal to a third country[] without

meaningful notice and an opportunity to assert a fear-based claim" likely violates the Due Process Clause. *Hao Qu*, 2026 WL 836681, at *5 (cleaned up). Dia has established a likelihood of success on the merits of his due-process claim sufficiently strong to warrant the entry of preliminary relief.

### 2. *Irreparable Injury*

"For the same reasons that the Court finds there to be a high risk of erroneous deprivation," *Cruz Medina*, 806 F. Supp. 3d at 552, the Court also finds that Dia has shown he would suffer irreparable harm by being removed to Ghana before being afforded the chance to establish that he reasonably fears torture or persecution in that country. Dia's removal from the United States, a country in which he has lived for many years and in which his immediate family resides, would be a severe and lasting harm. Moreover, the very fact that Dia's right to due process would be infringed by such a removal constitutes another irreparable harm. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed."). This is to say nothing about the possibility that Dia could be tortured or persecuted if removed to Ghana. These serious risks all counsel in favor of preventing Dia's removal until he has been given the chance to raise his fear-based claims about Ghana.

### 3. *Balance of Equities and the Public Interest*

"When the government is the nonmoving party on a TRO application, the Court's consideration of the balance of the equities and public interest merge." *Singh ex rel. Navarro v. Janecka*, No. 5:26-cv-671, 2026 WL 712826, at *8 (C.D. Cal. Mar. 9, 2026). Here, both the equities of the case and the public interest demand that the Court act to prevent Dia's being potentially deprived of a constitutional right.

### IV.   CONCLUSION

**IT IS ORDERED** that Dia's motion for a temporary restraining order (ECF No. 6) is **GRANTED**. Respondents may not remove Dia to Ghana **or any other third country** before he

7

has been given a full and fair opportunity to raise a fear-based claim about his removal to that specific country before an immigration judge.

**IT IS FURTHER ORDERED** that Respondents shall file a status report within **two days** of the entry of this Order confirming their compliance with it.

**IT IS FURTHER ORDERED** that Respondents shall show cause in writing no later than **seven days** from the entry of this Order why a preliminary injunction should not issue.  Dia may file a response no later than three days after Respondents' filing.

Dated: April 14, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE